Filed 8/25/21  P. v. Romero CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OSCAR RENE ROMERO,<br><br>    Defendant and Appellant. | B307941<br><br>(Los Angeles County<br>Super. Ct. No. TA037628) |

APPEAL from an order of the Superior Court of Los Angeles County, John J. Lonergan, Jr., Judge.  Affirmed.

Vejar Law Firm and Erika Vejar for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Roberta L. Davis and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

Oscar Rene Romero appeals from an order denying his motion to vacate his 1998 conviction for lewd acts upon a child. Over 20 years after pleading nolo contendere to that offense, Romero now claims that his conviction was legally invalid because he failed to understand the potential adverse immigration consequences of his plea.

Romero contends he received ineffective assistance of counsel and entered his plea under duress, both constituting prejudicial errors warranting relief under section 1473.7 of the Penal Code.[1]  However, the record before us strongly supports the inference that Romero's primary reason for accepting the plea bargain was the seriousness of the charges he faced if convicted of all counts, especially in light of the vastly reduced exposure he received through the plea agreement.

Under our independent judgment standard, Romero has provided insufficient evidence for us to conclude that he likely would have rejected the plea offer had he correctly understood either its actual or potential immigration consequences. Accordingly, we affirm the trial court's order denying his section 1473.7 motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. 1998 Felony Conviction

Romero came to the United States from Guatemala in 1982, becoming a lawful permanent resident in 1990.

On June 16, 1997, he was arrested and charged with eight counts of lewd acts upon two children, Brenda L. and Bernice L.,

---

[1] Undesignated statutory references are to the Penal Code unless otherwise noted.

both of whom were under 14 years of age, in violation of section 288, subdivision (a).  He spent the next 10 months in custody awaiting trial.

On April 24, 1998, Romero pled nolo contendere to one count of lewd acts upon a child, and the remaining charges were dismissed.  According to the plea transcript, Romero was specifically informed that his conviction "could result in deportation, denial of naturalization or denial of re-entry."

During the plea proceeding, there was considerable back-and-forth between Romero, his counsel, the prosecutor, and the trial court over a variety of issues, including the indicated sentence, the need to register as a sex offender, the potential unavailability of witnesses, the circumstances for the reduced custody exposure, custody credits, and whether to release Romero immediately or keep him in custody until sentencing.

Romero actively participated in the plea hearing.  At no point did he ask any questions about immigration consequences, although the district attorney plainly stated that he could be deported as a consequence of his plea.  When the prosecutor asked Romero whether it was in his best interest to plead no contest, he answered affirmatively, stating "[t]hat's the only way that I can keep my life."  His counsel immediately clarified that Romero was concerned about fear of physical retribution from other prisoners who knew that he had been charged with sexually abusing children.  Romero also acknowledged that no one had threatened or coerced him to enter his plea.

At the conclusion of the plea colloquy, the trial court concluded that Romero had "expressly, knowingly, understandingly and intelligently waived his constitutional rights," and entered his plea "freely and voluntarily . . . with the

3

understanding of the natures and consequences thereof." He was released from custody that same day and ordered to appear at sentencing with a *Cruz*[2] waiver.

On August 14, 1998, Romero was sentenced to a term of three years in prison, but, pursuant to the indicated sentence, the execution of his sentence was suspended and he was instead placed on five years of probation on the condition that he serve one year in county jail, for which he was awarded full custody credits.

## B.     Deportation Proceedings and Motion to Vacate the 1998 Conviction

On June 10, 2014, the United States Department of Justice Immigration and Naturalization Service instituted removal proceedings against Romero under section 240 of the Immigration and Nationality Act. Romero was charged with removal for violation of section 1227(a)(2)(A)(iii) of title 8 of the United States Code, which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

The charging document advised Romero that his 1998 conviction constituted an aggravated felony, and that he was therefore subject to removal and deportation. (See 8 U.S.C. § 1101(a)(43)(A).) There has yet to be a final order of removal filed against Romero.

On February 26, 2020, Romero filed a motion to vacate his conviction pursuant to section 1473.7. His declaration urges that his plea was entered under duress, and that his defense counsel provided ineffective assistance.

---

[2] See *People v. Cruz* (1988) 44 Cal.3d 1247.

Romero's declaration goes on to state that, although he insisted upon his innocence, his counsel advised him to accept a plea deal. He claims to have been first offered a plea of 12 years in prison, which he refused, before accepting a plea of no contest in exchange for five years of probation. Romero does not remember whether he discussed his immigration status with his defense attorney, or whether counsel explained the potential immigration consequences of his plea.

On July 24, 2020, the trial court heard argument on Romero's motion, afterwards concluding that Romero's plea was taken "pursuant to the law" in 1998, that he likely took the plea deal to dramatically reduce the scope of his charges and potential jail time, and that he was properly advised of the potential immigration consequences of his plea. Accordingly, the trial court denied the motion.

On September 18, 2020, Romero timely appealed.

## DISCUSSION

Section 1473.7 authorizes "[a] person no longer imprisoned or restrained" to "prosecute a motion to vacate a conviction or sentence" where the "conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, former subd. (a)(1).)

To demonstrate prejudicial error under section 1473.7, a former defendant must establish, by preponderance of the evidence, "a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).)

5

On appeal, we independently review section 1473.7 motion proceedings.  (*Vivar*, *supra*, 11 Cal.5th at pp. 523-524.)  " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.]"  (*Id.* at p. 527.)  Independent review is distinct from de novo review; when conducting an independent review of a judgment, "[a]n appellate court may not simply second-guess factual findings that are based on the trial court's own observations."  (*Ibid*.)  "Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7."  (*Id.* at p. 528.)

Romero claims that his counsel rendered ineffective assistance by failing to advise him of the potential immigration consequences of the 1998 plea, and refusing to explore alternate deals that could have protected his immigration status.

"[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with ' "objective evidence." ' "  (*Vivar*, *supra*, 11 Cal.5th at p. 530.)

In *Vivar*, the Supreme Court held that the defendant was entitled to relief under section 1473.7 because the objective evidence demonstrated that the defendant had strong family ties to the United States, could not speak the dominant language of his native country, consistently expressed concern about his immigration status throughout the initial criminal proceeding, and presented evidence that the prosecution had offered a more lenient immigration neutral alternate plea deal.  (*Vivar*, *supra*, 11 Cal.5th at pp. 530-532.)

There is a dearth of objective evidence corroborating Romero's assertions.[3] There is no evidence that he raised concerns about his immigration status with either his counsel or the court at any point in the proceedings during 1997 or 1998. Nor is there evidence that he was insufficiently advised of potential immigration consequences. To the contrary, the plea transcript in 1998 shows exactly the opposite.

There is also no evidence that he was or would have been offered a more lenient plea deal or an immigration neutral deal. Indeed, the offer Romero eventually accepted by way of an indicated sentence was far more lenient than the one he had previously been offered or, indeed, than the maximum allowable prison sentence recommended in Romero's probation report.

Romero only speculates about how his plea counsel approached the bargaining process. As the trial court concluded, Romero had good reason to accept the plea bargain "based on the seriousness of the charges and what he was facing potentially if he was to be convicted on all six counts," regardless of its impact on his immigration status.

Standing alone, Romero's assertions that he only pled nolo contendere because of his plea counsel's alleged failure to advise him of his adverse immigration consequences are entitled to little weight. (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78 [" 'Courts should not upset a plea solely because of *post hoc*

---

[3] At the hearing, Romero's current public defender stated that Hideo Nakano, Romero's former public defender, had been fired and had refused to provide a declaration in support of her motion. Nakano purportedly said to tell the trial court that he had been an "incompetent boob" when defending Romero. Such rank hearsay is entitled to no weight.

assertions from a defendant about how he would have pleaded but for his attorney's deficiencies' "]; see also *People v. Martinez* (2013) 57 Cal.4th 555, 564 ["the test for prejudice considers what the defendant would have done, not what the effect of that decision would have been"].)

Romero also contends that he entered the plea under duress, and only accepted the plea deal to escape threats of physical violence from his fellow inmates while in custody. He suggests that the duress he suffered in custody overwhelmed his ability to think rationally about the consequences of his nolo contendere plea, including any potential immigration consequences. He appears to argue that this error could have been averted had the judge ordered that "proper precautions be taken so as to remove the duress element of Mr. Romero's plea calculus."

This contention is belied by Romero's own declaration, wherein he states that his defense attorney arranged for him to be moved to an isolated cell in order to protect him from further threats of violence *before* his plea bargain was reached. (Compare *People v. Sandoval* (2006) 140 Cal.App.4th 111, 126 [allowing withdrawal of a guilty plea under § 1018 where a fellow gang member had threatened to kill the defendant if he did not enter the plea]; *People v. Weaver* (2004) 118 Cal.App.4th 131, 149-150 [allowing withdrawal of a guilty plea under § 1018 where the trial judge put undue pressure on the defendant to accept a guilty plea].)

Additionally, Romero has not shown how any purported duress specifically impacted his ability to evaluate or defend against the plea's potential impact on his immigration status. (*People v. Vivar* (2019) 43 Cal.App.5th 216, 233 [for the purposes

of providing relief under § 1473.7, legal invalidity requires a prejudicial error that damages the movant's " ' "ability to *meaningfully understand*, defend against, or *knowingly accept* the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere" ' "], revd. with directions (2021) 11 Cal.5th 510.)

As we have said, more likely than not, Romero took the district attorney's reduced plea offer in 1998 to dramatically reduce the scope of his charges and immediate prison exposure. As also noted above, there was no evidence that he was offered an immigration neutral alternative plea. Accordingly, we cannot conclude that he suffered a prejudicial error under section 1473.7.[4]

---

[4] Romero provides no authority for the proposition that duress in the form of threatened physical harm by inmates should play a role in the immigration consequences calculus. Other legal mechanisms, such as a petition for writ of error *coram nobis*, are traditionally used to invalidate a plea entered under duress of mob violence. (*People v. Kim* (2009) 45 Cal.4th 1078, 1102; *People v. Perez* (1908) 9 Cal.App. 265, 266.) Because we decide this case on a lack of evidence, we decline to address whether duress can ever render a plea legally invalid under section 1473.7.

## DISPOSITION

The order is affirmed.
NOT TO BE PUBLISHED


                                    CRANDALL, J.*


We concur:



        CHANEY, J.



        BENDIX, Acting P.J.

---

        * Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.